May it please the Court, I'm William Davis, appearing for KB2S, KB Consulting, as well as the Appellants here. The first major question before the Court this morning is the District Court's reliance upon Lou Jan, the case of Lou Jan, to, it appears, change the requirements, at least the District Court acted, I believe, as if it changed the requirements for standing under the Fair Housing Act. It's our position that Lou Jan did not make those changes. And nonetheless, Lou Jan was not a case that relied upon, it was not a Fair Housing Act case, first of all. It's a 92 case, and its standard of injury, causation, and regressibility is really no different than this Court's, I would say, garden variety standing interpretations of what the District Court has said, which is that injury, in fact, is the only requirement under the law for a Fair Housing Act standing. And then if one looks at that, injury, in fact, is the requirement under both standards, Lou Jan and the Fair Housing Act standard. Causation is still there under either standard. And regressibility, which I suppose is standards and injunction, is also still there. So starting from that position. But, counsel, isn't, without an application for a permit, isn't the alleged injury simply hypothetical? If there was no application, I think that it would be hypothetical. That's not our facts here. Our facts are that the City has policies, formal and informal, and their informal policy is that they will approve no development that is not first approved or sometime in the timeline prior to their final decision about the project is approved by their neighborhood councils. And that's why Mr. Wilson was successfully developed in San Diego before, spent a great deal of time trying to get on the agenda and trying to get an up-and-down vote from the Neighborhood Council for City Heights. So the problem is, if you just simply say, even though he went through a preliminary review process with the City, he said there's no formal application beyond that, even if you stay there, what you've really done is allowed a City that wishes to, or another party that wishes to, make their approval subject to some other group. And you know that's not going to happen. And if you go through the regular process first, just spend $80,000 or $100,000, only to find out the Neighborhood Council won't approve it. So what you do is, logically, you go there first, try and get that approval. But then if you have that, then basically it goes forward. He did not need, Mr. Wilson did not need a zoning change. He met all setback requirements. He met all the environmental requirements. There was literally no requirement that he did not meet. And also, the City's discretion to turn down a low-income development is severely constrained by state law in any event. So the project would have been approved. The problem really was the City wanted this approval from the Neighborhood Council group, but simply couldn't get it. The other issue with that is they went much, much further. What would have been involved in simply making an application? How expensive would that have been? You mean to just file a piece of paper? Yes. That I don't know. It's generally some thousands of dollars for commercial development. It's significant. Mr. Wilson had already at that point followed the same procedure that he did for previous development, the Mesa Villas project, which he had developed there. And you start a process whereby you start having to spend a great deal of money. That's really what happens. Once that's there, you have to do that. So the question of fact here is what I think is critical, which is where the City ostensibly has this policy of requiring this application for this other group first, or ultimately, is there some other return you'd have to make beyond that? I don't know why that would be true, because really just, if you think about it, to be able to do whatever you want, you have your written policies, and then you have your real policies, which don't actually match your real policies. And where does it leave you? They say you have to have that first. He goes to do it, doesn't get it, and they say, well, you're going to go forward. So I guess another way of stating your position, and correct me if I'm misstating it, is that you have started the application process, but that the application process has this first part, which is unwritten, but which is necessary nevertheless, and there's no point in filing the formal application unless you get through the first unwritten part. But that that is the application process. That's correct. The other part of it would have been probably another $100,000, and I think anybody logical in that situation would meet the city's principle requirement, which really was to get the successful vote from the Neighborhood Council first. Also, bear in mind the additional facts here. The city official, Laura Evans Gates, who was the planner for the City Heights Planning Group and also for my client, had an interesting role here. She actually went so far as to interfere, actively interfere, by telling the seller's broker that our project would never be approved, which means we'd never get entitlements, is the phrase. The granting of a permit is a legislative act or a quasi-legislative act. Certainly a variance would be, if you need it. Or a zoning change would be a legislative act. A variance would be a legislative act. Isn't the granting of a permit a legislative act, an exercise of political judgment as much as anything? I don't believe it is. The permit, up and down on a permit, is generally for one property, one property only. And usually the legislative decision is either spending money or an ordinance of some sort that has application across the city or citywide. So I believe the permit is individual, and it used to be referred to as part of the city council, however. I'm sorry? It's issued by the city council. Not in all instances, but you're right from a broader sense that they do have control over that, although for a lot of developments nowadays, the city council never does vote. They delegate that power. Is it a zoning commission or a building commission or something? It's a planning committee, usually to a planning committee, and sometimes what they refer to as over-the-counter. In other words, you'll simply show you have all your plans. You just proceed, basically, with the design review. And I think San Diego has some of those kinds of things that probably would have been applicable here. They basically sometimes just do design review in certain types of projects. I don't know if this one would have been one or not. That's why you would have been having to spend so much money so quickly because at that point you're basically moving into the latter stages. I'm not saying they would have done it that way because they have the power. So in your view, there's no political judgment or discretion that's involved in issuing a permit? Well, I won't say no discretion. I will say as to the low-income development, the discretion is set forth in California Government Code 65-589.5, and there are very limited instances in which a city can turn down a low-income development, which is why in this category of the case we see so many informal attempts to disrupt the contractual relationships that the developer has, and often if you look at the other case law, St. Peter Hotel, Silver Sage, some of those cases you'll see is a pattern of interfering with the financing of the development and their contract rights. I see I have about a minute and a half left. Why don't you go ahead and say that and we'll hear from the city. Thank you. Good morning, Your Honors. Glenn Spitzer for Respondent City of San Diego. Plaintiff's claims, as we know, are based on the Fair Housing Act, which requires showing of discrimination. As this court stated in San Pedro Hotel v. City of Los Angeles, to establish standing under the act, the plaintiff must show that the defendant interfered with the housing rights of a protected member and that as a result, the plaintiff sustained an actual injury. So we're at the summary judgment stage here, which requires under Gamble v. City of Escondido, that plaintiff prove the discrimination and injury by sufficient evidence that would allow a jury to return a verdict in favor of that party. Now, plaintiff's injury, that's just the background. Plaintiff's injury here is a failure to build a 50-unit affordable housing project. Now, under the requirements for Article III standing, plaintiff had to show the causal connection, they had to show injury in fact, and they also had to show redressability. Now, with the causal connection, that's the inability to build a 50-unit affordable housing project that was fairly traceable to the actions of the City of San Diego. Under the causal connection, plaintiff failed to show it because the developer voluntarily abandoned the project when it failed under the contract to make a monthly payment directly into the escrow as was required. Isn't that a dispute? That's actually not disputed by confident evidence. Plaintiff's developer stated in his declaration, and that is at volume one, page 99, that he quotes, I did, however, tender all payments due the seller, monthly or otherwise, to him through my real estate broker, Jerry Mosbarger. And in Jerry Mosbarger's deposition, he denies ever making such a payment, and that's at volume five, page 1264, where he was asked, so Mr. Wilson never deposited the July 2003 $3,000 check?  So it's not disputed by confident evidence. What's incompetent about that? What that establishes, there's no evidence that shows that there was a payment made into the escrow, and under the clear terms of the contract, which is an undisputed, the terms of the contract... I said I did. Excuse me?  But the broker testified that there was no such payment. You know what we call that? We call that conflict in the evidence, which is something a jury has to resolve. What you've got is two people saying different things about a historical event, and you know what? If you will learn, that happens all the time. People, eyewitnesses, will look at the same event and will give you three different versions. There will be two witnesses, there will be three different versions of what happened. So what you've got yourself is a conflict in the evidence, and this is a good conflict for you, something that you can take to the jury, and the jury will probably believe you. But that doesn't save you from, doesn't mean that the evidence is not competent. Well, what's not competent about it? Your Honor, the only plaintiff's relying on the fact that the broker made the payment, but the broker has testified that he's made no payment. Maybe the broker's lying. Maybe the broker forgot. Maybe your broker misunderstood. Doesn't mean that what they said is not true. But then the only evidence that we're relying on is the developer's statement that the broker made the payment. No, that he made the payment to the broker. But under the clear terms of the auction contract, a payment was required to be made directly into escrow, and if the developer stated that he didn't make that payment, then there's no... Maybe they've got checks. I mean, it doesn't matter what the guy says. Maybe they've got checks to prove it. Maybe they've got money transfers. There are all sorts of ways of proving things. Just because somebody says, I didn't do it, doesn't mean it's the gospel truth. I understand what you mean. Unless it's in the gospels. Then it is the gospel truth. But this was at the summary judgment stage. This was in the gospels, wasn't it? No, this was not part of it. But we're at the summary judgment stage, and if there is such evidence that a payment was made into escrow, it should have been part of the moving papers of the plaintiff. But even if there is a dispute on the issue of the causal connection, we still have injury in fact, and we still have the redressability issues. And with respect to injury in fact, there are two cases controlling. The city cited a number of cases on ripeness, which states that an application must be submitted and denied. However, under the Supreme Court's cases, Worth v. Selden and Village of Arlington Heights, there were some certain rules that were set in place for these types of Equal Protection and Fair Housing Act claims. And under Worth, there had to be a viable project at the time of filing a complaint. And the court found that there was no standing because there was no viable project at the time of filing a complaint. Here what happened, because the project was abandoned years prior to filing a complaint, there was no viable project. The Supreme Court, and also in Worth and then in Village of Arlington Heights, they created what was called the substantial probability standard. And they stated that a plaintiff must show there is at least a substantial probability that the housing project will materialize. And plaintiff is unable to show that here. In Arlington Heights, I think that's probably the most controlling case on this issue. Developers sought a reason to build low-income housing in an almost exclusively white neighborhood and submitted an application to that end, and the application was denied by the village. The developer in that case had a detailed and specific project, and to prepare for a hearing on the zone change, the developer met with the village staff to ensure that the development met with all local requirements. And in fact, the parties stipulated that the development did meet all local requirements. And that's the significant difference here. We have not gone through the application process. So you say there's no ripeness. There's no ripeness, and in the same sense there's no injury in fact, because it's still just a hypothetical harm. The court in Village of Arlington Heights stated that there was no cause for speculation in that case as to the viability of the project because of the detailed and specific plan, which the parties have stipulated to, even though there was the ever-present uncertainties associated with lack of financing and the fact that construction would or would not go forth. Those uncertainties are always there with development projects. But here what we have is we have a simple preliminary review, which showed that the plaintiff's development, a 50-unit affordable housing project, was not viable on the site. There's no question as to whether that property is viable on the site. The preliminary review showed that there were environmental issues, setback requirements for a park, for street widening, there were parking requirements that were not met. But stuff like that arises with almost any project. Usually they're worked out. Their claim is that the reason this didn't go forward and couldn't go forward is because this board said no children. We don't want any more projects with children. We've got enough children. We want a bunch of old people. That's their claim. Your Honor, I think that goes back to the causal issue, because if it was the planning group, a private citizen group, that prevented the project from going forward, then the planning group should be a party here, but the planning group's not. Yeah, but they're claiming that the city has given the planning group a veto. That's their claim. We don't have a quarrel with the planning group, which is a private body, but they claim that the city has given this power so that if you don't come in with the blessing of this planning group, then you don't really have a chance to get a permit. The city won't give it to you. That's their claim, and for purposes of this proceeding, you have to accept that as being true. So what do you do with that? Your Honor, because we're at the summary judgment stage, there has to be some confidence to the evidence that it's completely lacking in foundation. A person can't just come up and say these are the city's policies unless we have some sort of foundation that would allow that person to be able to make those types of claims. The city presented evidence of the municipal code that showed the application process, and there's no step in that process that requires you to go to a community planning group. And it's actually encouraged, but it's certainly not a requirement. Well, in the real world, you better do that or you're not going to get your project. I agree that if we get to the hearing phase after an application is filed, city council is going to ask, well, what's the recommendation from the private group on this? But that's not actually going to prevent you from filing your application. It's going to prevent you from getting it approved. You know, there's actually going to file all you want and get to the hearing, and the city council says, what does the planning group say? And according to them, if they say the planning group says no, then it's off and off because they will never approve it. That's their claim. Okay. That's because they don't want to lose votes. I agree with that. But I do have to say that I litigate secret claims all the time where the city council has gone against the recommendation of the planning group. And in our record, in the deposition of James Gilbert. You mean grad students when the planning group? When the planning group opposed it. They have done that? Oh, that's a regular occurrence, Your Honor. In our record here, James Gilbert, who's a member of the planning group who supported the project, he testified that the city council routinely approved condo conversions despite recommendations against it. So we have evidence even in our record. And if the court can take judicial notice of cases, I can't cite some right now, but I see it referenced all the time in case law where it was recommended one way and then the city council went the other. We don't have any action by the city council here at all, do we? We have no action by any city official. And I did want to clarify one point, Your Honors. You mentioned whether city council would have to pass on this. Because there are environmental issues that need to be addressed here, and there needs to be an environmental document, this is what's called a Process 5 development, which requires city council to pass on it. And it's not necessarily a legislative act. It's a quasi-judicial act. There may be legislative components if you wanted to get a zone change or something like that. But I do want to say there's one last issue of the Article 3 requirement, and that is redressability. And that's where we get to the discrimination issue. Plaintiffs cannot meet the redressability requirement because of this discrimination issue. They didn't make any showing of actual impact to real persons. And that's what this court required in the Gamble v. City of Escondido case and also the FAFS v. Department of HUD case. The court said there has to be an actual impact as opposed to a mere inference, that a mere inference is insufficient. Plaintiff here is basing their claim on statistical evidence only, and that statistical evidence is showing that it's more likely that assuming there is a 50-unit case. Your time's up. Okay. Thank you, Your Honor. Mr. Davis, would you address that question that I asked, or whether it was a comment? There was no action here by the city council at all. No. The city council, we never got that far because, obviously, there was interference of my client's contractual rights and an ordeal of things with Ms. Gates telling the seller. But there was not even an application for a permit, was there?  It was required, in Mr. Wilson's understanding, by the planning group itself. He said, well, we won't, it's unusual apparently for them, but they wanted that review. So he went to the city and had a preliminary review. So the city did review it. They identified various standard issues, actually. And then he went back, Wilson went back to the planning group trying to get that approval. But even apart from that issue, I think it follows the Fair Housing Act to do what Ms. Gates did. And she, in fact, was a city official, is a city official planner for that area. And she told the seller, the seller's agent, that the project would never be approved by the city. And then there was a major change because before that time, the course of dealing on the contract was that Mr. Wilson tendered payments. They were accepted. They were oftentimes accepted late. They had a fairly good working relationship. But it is a matter of undisputed fact here that once that conversation occurred with the broker, and the city official told the broker Mr. Wilson's project was dead as far as the city was concerned. He never accepted another payment. And at the time Ms. Evans Gates did that, that conversation took place, it was about a week, maybe two weeks, late May of 03. And then there was a meeting coming up with Mr. Wilson and the brokers and the seller and tonight he's interest. So that was right before that. And then that's what they said. No, you're done. We won't take your money. And that's it. So the tender was rejected at that point. But it's not accurate to say that there were no city officials involved in this development because apart from the issue of whether there was a formal application or not, what you have is a city official interfering with a private contractual arrangement and essentially destroying the contract. And then turning around and buying the property for less money than Mr. Wilson was going to Okay. Thank you. Thank you. Okay. Sorry. We're adjourned.
judges: Kozinski, Pregerson, Mills